IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN CARRIE BARRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 15-598 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Senior District Judge.

## OPINION AND ORDER

Plaintiff Colleen Carrie Barry ("Barry") appeals an ALJ's denial of claims for disability insurance benefits and supplemental security income. Barry alleged a disability beginning May 1, 2011 based upon degenerative disc disease, bladder problems, depression, diverticulitis, arthritis, carpal tunnel syndrome, left leg swelling, pinched nerve, Barrett's Esophagus, and acid reflux. *See ECF Docket No*. [11], p. 1. The ALJ concluded that Barry had the residual functional capacity to perform sedentary work, with some restrictions. (R. 22-30) Following consultation with a vocational expert, the ALJ determined that Barry could perform jobs existing in the national economy. (R. 22-30)

Barry has filed a Motion for Summary Judgment asserting various errors associated with the ALJ's decision. *See ECF Docket No*. [10]. The Commissioner has filed an opposing Motion. *See ECF Docket No*. [14]. After careful consideration, and for the reasons set forth below, the ALJ's decision is remanded for further consideration consistent with this Opinion.

### I. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the

record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

## II. THE ALJ'S ANALYSIS

Following the five-step analysis, here, the ALJ concluded that Barry met the insured status requirements of the Social Security Act through March 31, 2016. (R. 19) She further determined that although Barry worked part time after the alleged onset date, her work activity did not rise to the level of substantial gainful employment. (R. 19) [1] The ALJ next concluded that Barry's arthritis, carpal tunnel syndrome, diverticulitis, obesity, Barrett's esophagus and depression

---

[1] Barry worked part time for Every Child in 2011, and for Mercy Behavioral Health in 2011-2012. (R. 19)

constituted "severe impairments," but that her vertigo constituted a "non-severe impairment." (R. 20) Further, according to the ALJ, Barry's impairments did not meet or medically equal any of the relevant Listings. (R. 20-22) With respect to residual functional capacity ("RFC"), the ALJ concluded that Barry could perform sedentary work, except that she is limited to lifting up to 10 pounds occasionally; she is limited to standing and walking for 2 hours and sitting for up to 6 hours in an 8 hour workday with normal breaks; she needs to sit and stand every hour; she should avoid unprotected heights and dangerous machinery; she is limited in the use of her upper extremities; and her work should be limited to simple, routine, repetitive tasks performed in a work environment free of fast paced production requirements. (R. 22-23) Finally, although the ALJ found Barry unable to perform any past relevant work, the ALJ determined that she could perform such occupations as a telephone clerk, information clerk and optical assembler. (R. 30)

Barry objects to the ALJ's RFC determination and the ALJ's assessment of the physicians' reports in formulating such determination. Barry also contends that, even accepting the RFC as correct, the ALJ did not reasonably rely on the vocational expert's testimony at step 5 because of the existence of a conflict between the DOT and the vocational expert's testimony.

    A. <u>Residual Functional Capacity Assessment</u>

As stated above, the ALJ found Barry to have the residual functional capacity ("RFC") to perform sedentary work with some restrictions. Barry urges that the ALJ arrived at this conclusion in error, and primarily due to her failure to give appropriate weight to the opinions of her treating physicians. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1) and § 404.1527(c)(1). Additionally, the ALJ generally will give more weight to opinions from a treating physician,

3

"since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2) and § 404.1527(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id*. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 416.927(c)(1)-(6) and § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id*. Similarly, under 20 C.F.R. § 416.927(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Security*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate

issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 416.927(d)(1), (3) and § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating "[o]pinions on disability are not medical opinions and are not given any special significance."). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation for his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

After careful consideration, I agree with Barry that the ALJ's analysis of the treating physician's opinions is deficient and as such her formulation of Barry's RFC must be reassessed upon remand. For example, the ALJ's discussion of Dr. Samir Ayasso's opinion consists of three sentences. The first two sentences are simply a repetition of Dr. Ayasso's opinion which supports a finding of disability. *See* (R. 26) (noting that Dr. Ayasso opined that Barry "required a job with access to a rest room and would need unscheduled restroom breaks during the day for up to 15 minutes at a time," and that she "would frequently experience pain and symptoms interfering with her attention and concentration.") Her entire analysis of the weight accorded to Dr. Ayasso's opinion consists of the following *single sentence*: "[t]he undersigned gives his opinion some weight, but notes that the evidence of record shows that the claimant suffers from

flares of her diverticulitis and has periods during which she is asymptomatic," with a string cite to a number of documents. (R. 26)[2]

This is not an appropriate explanation under 20 C.F.R. § 404.1527, § 416.927 or SSR 96-5p for accepting or rejecting Ayasso's opinion. There is no discussion of what weight, if any, the ALJ accorded Ayasso's position as a specialist, or the weight given based upon the length of treatment (treating with Dr. Ayasso every 3-4 months since 2000). Nor am I able to discern from a string citation what evidence the ALJ found in those portions of the record to support her finding. Indeed, I question whether any evidence of record indicating that Barry's diverticulitis is asymptomatic at times truly conflicts with Ayasso's conclusion that her diverticulitis is episodic in nature. On remand, the ALJ must provide a more thorough and reasoned analysis of the weight to be given the treating physicians' opinions.

### B. Conflict Between the DOT and the Vocational Expert's Testimony

Barry urges, in the alternative that even if the ALJ's formulation of her RFC was correct, a remand is nevertheless required because of an inherent conflict in the ALJ's finding at step five that she is capable of performing jobs that exist in significant numbers in the national economy. In this instance, the ALJ relied upon the testimony of a vocational expert in determining that an individual with Barry's residual functional capacity could perform the jobs of a telephone clerk,[3] an information clerk, and an optical assembler. Barry contends that the ALJ erred in relying upon the VE's testimony in this regard because the VE's opinion is at odds with the description of those jobs in the Dictionary of Occupational Titles ("DOT") and with the RFC as formulated by the ALJ.

---

[2] The ALJ's analysis of Dr. Hall's, Dr. Shetty's and Dr. Silvaggio's opinions is similarly deficient. (R. 26-29)
[3] The parties agree that the VE identified the position of "telephone clerk" by a code that does not exist in the DOT. The Commissioner does not dispute Barry's contention that the ALJ's and / or VE's identification of this position as representative of an occupation available to Barry was erroneous.

As the Third Circuit Court recognized in *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014), at the fifth step of the sequential analysis, the Commissioner bears the burden of demonstrating that the claimant can perform jobs existing in the national economy. "To determine what type of work (if any) a particular claimant is capable of performing, the Commissioner uses a variety of sources of information, including the DOT,[4] the SSA's own regulatory policies and definitions (found in the Code of Federal Regulations ("CFR")), and testimony from VEs." *Zirnsak*, 777 F.3d at 716.

Issues arise when a vocational expert's testimony conflicts, or appears to conflict, with information provided by the DOT. "As a general rule, occupational evidence provided by a VE should be consistent with the occupational evidence presented in the DOT." *Id*., at 616 (citations omitted). Here the VE opined that someone with Barry's RFC could perform the requirements of an information clerk. The parties agree that, according to the DOT, an information clerk requires a reasoning level of 3. *See ECF Docket No*. [11]. p. 5 and *ECF Docket No*. 15, p. 16. "[J]obs with a reasoning level of 3 require that an employee be able to '[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Zirnsak*, 777 F.3d at 616 (citations omitted). Yet, the ALJ restricted Barry's work to "simple, routine, repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple work decisions and routine work place changes." (R. 24) Barry urges that the ALJ's RFC thus conflicts with the DOT's description of a reasoning level job 3.

To ensure consistency between the DOT and a VE's testimony, courts have imposed an

---

[4] "'The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job.'" *Zirnsak*, 777 F.3d at 616, *quoting, McHerrin v. Astrue*, Civ. No. 9-2035, 2010 WL 3516433 at * 3 (E.D. Pa. Aug. 31, 2010).

obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs … and information in the [DOT].'" *Id*., at 617 (citations omitted). Specifically:

> An ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) "elicit a reasonable explanation" where an inconsistency does appear, and (3) explain in its decision "how the conflict was resolved." *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002). An ALJ's failure to comply with these requirements may warrant remand in a particular case. *Rutherford*, 399 F.3d at 557. However, this Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.* (*citing Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2004)).

*Id*., at 617. See also SSR 00-4p, 2000 WL 189704 (stating: "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. *At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.*") (emphasis added).

A review of the record reveals that the ALJ did not comply with any of requirements set forth in *Zirnsak* and SSR 00-4p. Specifically, the ALJ *did not* ask on the record whether the VE's testimony was consistent with the DOT. Consequently, the ALJ *did not* elicit a reasonable explanation for any inconsistency. Finally, the ALJ *did not* explain in her decision how the

8

conflict was resolved.[5] The ALJ's shortcomings in this regard are not necessarily fatal. "Although failure to comply with these requirements 'may warrant remand in a particular case, … the presence of inconsistencies does not mandate remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Abney v. Colvin*, Civ. No. 13-6818, 2015 WL 5113315 at * 4 (E.D. Pa. Aug. 31, 2015), *quoting, Zirnsak*, 777 F.3d at 617.

I must consider whether the "failure to inquire about or reconcile a conflict caused any harm to the claimant" in assessing whether to remand. *Zirnsak*, 777 F.3d at 618. If the record establishes that Barry could perform a level 3 reasoning job, despite the limitations set forth in the RFC, then any error arising from the ALJ's failure to comply with SSR 00-4p is harmless. *Id*. The *Zirnsak* court identified three factors relevant to assessing harm in this context: (1) whether the claimant disputes the ability to perform the skills associated with the jobs; (2) whether the claimant pointed out the conflict at trial or, if not, whether the conflict was "'obvious enough that the ALJ should have picked up on [it] without any assistance", and (3) whether the VE's identification of jobs was an exhaustive list or merely examples. *Id*., *quoting, Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

As to the first factor, Barry simply argues that the position of an "information clerk" as described by the DOT is facially inconsistent with an RFC calling for simple, routine, repetitive tasks. Barry has not met this factor. She does not contend she is unable to perform the duties associated with an information clerk. This factor weighs against a remand.

With respect to the second *Zirnsak* factor, there is no indication that Barry highlighted the

---

[5] The ALJ did include one sentence stating "[p]ursuant to SSR 00-04, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (R. 31) This statement does not satisfy the requirements of SSR 00-04 or what is outlined by the *Zirnsak* court. It does not "supply" the vocational expert's testimony regarding consistency, it does not supply any explanation regarding inconsistency nor does it provide an analysis of how such conflict was resolved.

purported inconsistency to the ALJ. In *Rodriguez v. Colvin*, Civ. No. 13-2205, 2015 WL 4486695 at * 6 (E.D. Pa. July 23, 2015) the court found that counsel's failure to attack the alleged inconsistencies between the VE's testimony and the DOT during the hearing meant that the claimant did not satisfy the factor. Yet, in *Rodriguez* the VE had testified during the hearing that his assessment of available jobs was consistent with the information provided in the DOT. *Rodriguez*, 2015 WL 4486695 at * 6. Here, the VE made no such representations. I find this distinction to be significant. Absent the VE's affirmative representation that the assessment of available jobs was consistent with the information provided in the DOT, counsel for Barry should not have been charged with attacking any alleged inconsistencies. Given the VE's failure to testify that his testimony was consistent with the DOT, I think that it should have been obvious to the ALJ that there should have been an inquiry as to any inconsistencies. This factor thus weighs in favor of a remand.

As to the final factor, I must consider whether the job positions identified by the VE were intended to be only examples, or an exhaustive list. The exchange between the ALJ and the VE was as follows:

> Q: Hypothetical number two. This individual could perform sedentary work lifting up to 10 pounds occasionally, standing and walking for about two hours, and sitting for up to six hours in an eight-hour workday with normal breaks. This person would also need to sit and stand every hour. This individual would have the same manipulative, environmental, and non-exertional limitations as found in hypothetical number one. Could an individual with these limitations perform the claimant's past work?
> A: No, she could not.
> Q: Would there be other jobs in the national economy that such an individual could perform?
> A: There is telephone clerk, 237.167-018, 52,000 jobs. Information clerk, 237.367-046, approximately 100,000 jobs. Optical assembler, 713.687-018, approximately 48,000 jobs.

(R. 81) I read this language as indicating that the list of jobs is exhaustive rather than illustrative. Significantly, the VE does not use any qualifier language such as "for example," or "for

instance," or "a range of jobs," in the context of discussing information clerk, telephone clerk and optical assembler. There is simply no indication that the jobs mentioned by the VE were intended to be merely illustrative. Consequently, I find that this factor favors remand.

There are enough differences between the facts at issue here and those present in *Zirnsak* and its progeny, which I find warrant a remand. Here, unlike the situation in *Zirnsak*, the ALJ failed to meet her obligation to affirmatively inquire about inconsistencies. Absent such an affirmative statement, it seems unfair to require the claimant to inquire about inconsistencies, particularly when the burden is on the Commissioner at this step of the analysis. Further, the VE gave the ALJ an exhaustive list of jobs. One job (telephone clerk) has already been eliminated as a viable option because both parties concede that whatever the VE referenced, it is not contained in the DOT. Simply stated, Barry is entitled to a more fully developed explanation of the ALJ's decision. *See Ingram v. Colvin*, Civ. No. 11-6002, 2015 WL 3513269, * 1 n. 3 (E.D. Pa. June 4, 2015) (remanding the action for further vocational expert testimony and distinguishing *Zirnsak* on the grounds that, in *Ingram*, "the ALJ did not ask the VE at all whether the VE's testimony was consistent with the DOT nor did the ALJ explain how the discrepancy or conflict was resolved….")

Barry raises a similar challenge to the ALJ's conclusion, based upon the VE's testimony, that she is capable of performing the job requirements of an optical assembler. The DOT describes the position of an optical assembler as one who "[a]ttaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdrivers." DOT No. 713.687-018. Barry again urges that this position as described by the DOT conflicts with the VE's testimony that an individual with limitations in using her upper extremities for overhead reaching and repetitive motions can perform this job.

The Commissioner counters that there is no conflict because the RFC as articulated to the VE in the hypothetical did not contain restrictions based upon fine manipulation and fingering. *See ECF Docket No*. [15], p. 16. After careful consideration, I find the Commissioner's position unconvincing. The ALJ barred Barry from repetitive movements involving her upper extremities. (R. 23) The DOT description of the job appears to involve frequent and repetitive motions. As above, the ALJ failed to elicit testimony from the VE as to whether his testimony conflicted with the DOT. Additionally, the VE's list of jobs appears to have been exhaustive rather than illustrative. Barry is entitled to an explanation as to how such conflict is, if at all, reconciled by the ALJ.

On remand, the ALJ must conduct an additional hearing limited to this issue, secure the testimony of a VE, and address the apparent conflict between the jobs of information clerk and optical assembler, as those are explained in the DOT and the answers given by the VE to hypothetical questions posed based upon Barry's RFC.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN CARRIE BARRY, | ) |
| Plaintiff, | ) |
| -vs- | ) Civil Action No. 15-598 |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

AND NOW, this 31st day of March, 2016, it is Ordered that judgment be entered in favor of Plaintiff and against Defendant. It is further Ordered that this action be remanded for further consideration as more fully set forth in the accompanying Opinion.

The Clerk of Courts is directed to mark this case "Closed" forthwith.

BY THE COURT:

s/ Donetta W. Ambrose
  Donetta W. Ambrose
  United States Senior District Judge